UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

ELIZABETH ANNE COATS,

              Debtor.

_____/

Case No. DG 11-04934
Chapter 13
Hon. Scott W. Dales

SUPPLEMENTAL OPINION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
                       Chief United States Bankruptcy Judge

On May 1, 2014 in Grand Rapids, Michigan, the court held a hearing to consider the Debtor's Third Amendment to Chapter 13 Plan (DN 102, the "Third Amendment"), and the objection to the Third Amendment filed by chapter 13 trustee Brett N. Rodgers (the "Trustee"). At the hearing, counsel for Elizabeth Anne Coats (the "Debtor") and counsel for the Trustee advised the court that, with one exception, they had resolved their dispute about the Third Amendment, obviating the need to conduct an evidentiary hearing. Rather than offering evidence at the May 1, 2014 hearing, they instead offered argument on the remaining issue involving the Trustee's concerns about the Uniform Spousal Support Order dated March 21, 2013, and entered in the Family Division of the Circuit Court for Ottawa County, Michigan (the "Family Court") in Case No. 08-61816-DO.[1]

More specifically, the Trustee asked the court to condition its approval of the Third Amendment on requiring the Debtor to take steps either to clarify, modify, or perhaps invalidate the October 2013 Order on the grounds that it deprives the Debtor's creditors of approximately

---

[1] For convenience, the court will refer to this Family Court order, and any subsequent orders with substantially similar terms as the "October 2013 Order."

$750.00 each month that the Debtor's ex-husband, Lowell Lamar Styer ("Dr. Styer") is withholding from her support payments under color of the October 2013 Order.

At the conclusion of the May 1, 2014 hearing, the court announced its intention to approve the settlement between the Debtor and the Trustee, which was described on the record and will be memorialized in a separate document, but to condition the approval on requiring the Debtor to take concrete and specific measures to address the Trustee's well-grounded concerns. At the request of the parties, and in an effort to assist the Family Court if called upon to revisit the October 2013 Order, the court agreed to issue a written opinion to supplement its oral ruling.

For present purposes, it is unnecessary to recount the somewhat tortured history of the disputes between the Debtor and Dr. Styer. It will suffice to say that pursuant to their Judgment of Divorce dated August 3, 2009 (the "JOD"), the Family Court required Dr. Styer to pay spousal support in the amount of $4,500.00 per month and, *inter alia*, awarded to the Debtor the former marital residence commonly known as 16525 Blair Street, West Olive, Michigan (the "Residence"), which was encumbered at the time by mortgages securing the joint obligations of the estranged couple. The JOD required Dr. Styer to make thirty-six monthly payments towards a home equity line secured by the Residence, but it also required the Debtor to "assume the balance owed against said property . . . and . . . save Defendant [sic] harmless therefrom,"[2] *See* JOD at p. 6.

At some point after she filed her bankruptcy case, the Debtor and Dr. Styer returned to the Family Court to continue wrangling over their unresolved issues involving Dr. Styer's spousal support payment, and his "hold harmless" claim against the Debtor arising from

---

[2] From the context, the court infers that the reference to "Defendant" in the quoted passage should have been to Dr. Styer, who was in fact the "Plaintiff," since the Debtor was retaining the Residence and assuming the Debt, and Dr. Styer was obliged to quit-claim his interest to her. There does not appear to be any controversy arising from this obvious scrivener's error.

Chemical Bank's collection activity against him. For reasons known only to the parties and their counsel, there was a remarkable lapse of time between the parties oral settlement of their dispute in the Family Court's hallways sometime in 2012, and the Family Court's entry of an Order dated September 3, 2013, which the October 2013 Order apparently superseded the following month.

As it turns out, neither of the spouses completely honored his or her obligations under the JOD, and eventually Chemical Bank, a lender with a claim secured by the Residence, sought and obtained a Consent Judgment against Dr. Styer in the amount of $62,098.78 (the "Chemical Bank Judgment").[3] It appears without controversy that the Chemical Bank Judgment is among the obligations for which the Debtor agreed in the JOD to hold Dr. Styer harmless and that the spouses purported to address in the October 2013 Order.

It also appears that the Chemical Bank Judgment may have been a factor in the decision of Dr. Styer and his current wife, Charmaine, to file a voluntary petition for relief under chapter 13, which they did on March 4, 2013,[4] while still embroiled in the Family Court dispute with the Debtor. For reasons that are not entirely clear, Chemical Bank filed a timely proof of claim in the Debtor's case (Claim No. 2), but neglected to file a timely claim in the Styer Case, although the bank apparently had notice of the case in time to participate.[5]

In general, a creditor's failure to file a timely claim in a chapter 13 case precludes the creditor from participating in any distribution under the plan, unless the debtor or trustee files a protective claim under § 501(c) and Fed. R. Bankr. P. 3004. *See* 11 U.S.C. § 502(b)(9) (court shall disallow untimely claim). Because Chemical Bank did not file a timely claim in the Styer

---

[3] Evidently because the Debtor was already under the bankruptcy court's protection by the time Chemical Bank filed its collection action against Dr. Styer, the bank did not name the Debtor as a defendant.

[4] *In re Styer*, Case No. 13-90103 (the "Styer Case").

[5] Chemical Bank eventually filed a motion for permission to file a late claim but later withdrew the request.

Case, Dr. Styer's trustee made it clear that she did not intend to pay that claim. This means, as a practical matter, that the Debtor's bankruptcy estate will pay a disproportionate share of Chemical Bank's claim, at least as compared to the burden upon Dr. Styer or his creditors.

Chemical Bank's neglect could amount to a windfall for Dr. Styer because if he completes his plan payments, his chapter 13 discharge will preclude Chemical Bank from enforcing its judgment against him. *See* 11 U.S.C. §§ 524 and 1328(a). Even if Dr. Styer obtains a hardship discharge under § 1328(b), the Chemical Bank Judgment will be subject to discharge. 11 U.S.C. § 1328(c).

Perhaps intending to exploit Chemical Bank's omission or perhaps intending only to protect himself from Chemical Bank's collection activity that would resume if he for some reason could not complete his chapter 13 plan payments, Dr. Styer bargained for and obtained the following provision within the October 2013 Order which excited so much concern on the part of the Debtor's Trustee. Although the October 2013 Order increased Dr. Styer's support obligation to $5,500.00, it also provided that he could "withhold" $750.00 each month to satisfy Chemical Bank's claim against him. The offending provision, including stricken text, is set forth in full:

> Plaintiff [Dr. Styer] will withhold the amount of $750 a month in order to satisfy the second mortgage debt to Chemical Bank that Defendant [Elizabeth Coats] was ordered to pay in Judgment of divorce ~~only if Plaintiff shows reasonable evidence that he is actually making payments of at least $750 a month to Chemical Bank for the loan from which Defendant was to hold him harmless~~ for twenty four months from entry of this order. This supersedes the fourth paragraph of the order entered on September 3, 2013.

*See* October 2013 Order at p. 2. Nevertheless, for several reasons, it seems reasonably certain that Dr. Styer will not have to pay Chemical Bank, at least not in the short term and probably not at all. First, as noted above, Chemical Bank did not timely file a claim against Dr. Styer in the

Styer Case so Dr. and Mrs. Styer's plan payments do not need to account for the claim. Second, the automatic stay in the Styer Case precludes the Bank from collecting the Chemical Bank Judgment at this time. Third, if Dr. and Mrs. Styer complete their plan payments in the Styer Case as the court found they probably would when it confirmed their chapter 13 plan earlier this year, Dr. Styer's chapter 13 discharge will insulate him from liability to Chemical Bank. Nevertheless, the parties persuaded the Family Court to include in the October 2013 Order precise and considerable protection—the right to withhold $750 in support payments from the Debtor—to protect against the contingency that Dr. and Mrs. Styer would not complete their chapter 13 plan. The Trustee contends, and the court agrees, that the Debtor, Dr. Styer, and their respective divorce attorneys provided this protection at the expense of the Debtor's creditors—at least if the October 2013 Order excuses Dr. Styer from ultimately paying the Debtor (or more precisely, her Trustee) an additional $18,000.00 (representing twenty four months of withholding at $750 per month).

As the court observed during the May 1, 2014 hearing, the withholding provision of the October 2013 Order effectively provided for Dr. Styer's contingent "hold harmless" claim against the Debtor. If the Family Court's order means that he can retain the $18,000.00 despite getting his chapter 13 discharge, the October 2013 Order effectively prefers Dr. Styer over all of the Debtor's other creditors—including Chemical Bank. Rather than sharing pro rata with other unsecured creditors, Dr. Styer will receive (or retain) $18,000.00 to hold him harmless from the very harm that his discharge may ultimately prevent.[6]

---

[6] As the Family Court evidently perceived, Dr. Styer's bankruptcy filing, coupled with Chemical Bank's failure to file a proof of claim, effectively made Dr. Styer's indemnification claim against the Debtor contingent on his failure to perform under his own chapter 13 plan. This contingent indemnification claim might have been subject to estimation in the Debtor's bankruptcy case under 11 U.S.C. § 502(c)(1). His income as a physician might suggest rosy prospects for completing his own plan, thereby substantially reducing the estimated value of his indemnification claim. The settlement between him and the Debtor, however, which the court approved after notice

From the court's review of the docket, it appears that neither the Debtor nor Dr. Styer sought relief from the automatic stay[7] before returning to Family Court to fight over the spousal support and hold harmless provisions of the JOD. They may have assumed, perhaps incorrectly, that a well-worn exception to the automatic stay for most domestic relations disputes[8] made it unnecessary for them to seek stay relief because Dr. Styer's domestic support obligation was at issue. But the Bankruptcy Code is more nuanced than that when it comes to the intersection between bankruptcy courts and family courts. For example, Congress quite deliberately used a defined term, "domestic support obligation," in the provisions carving out an exception to the automatic stay. That term has a precise federal definition:

> (14A) The term "domestic support obligation" means a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title, that is—
>
> (A) owed to or recoverable by—
>
> (i) a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative; or
>
> (ii) a governmental unit;
>
> (B) in the nature of alimony, maintenance, or support (including assistance provided by a governmental unit) of such spouse, former spouse, or child of the debtor or such child's parent, without regard to whether such debt is expressly so designated;
>
> (C) established or subject to establishment before, on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
>
> (i) a separation agreement, divorce decree, or property settlement agreement;

---

and an opportunity afforded to both parties' creditors, makes estimation unnecessary at this point. The court notes that Dr. Styer's plan proposes to pay all allowed claims in full.

[7] 11 U.S.C. § 362(a).

[8] 11 U.S.C. § 362(b)(2)(A)(ii) and (B).

(ii) an order of a court of record; . . .

(D) not assigned to a nongovernmental entity, unless that obligation is assigned voluntarily by the spouse, former spouse, child of the debtor, or such child's parent, legal guardian, or responsible relative for the purpose of collecting the debt.

11 U.S.C. § 101(14A). Indeed, the automatic stay generally does not preclude post-bankruptcy litigation involving paternity, custody, spousal support, and similar domestic relations matters within the traditional hegemony of the state courts, 11 U.S.C. § 362(b)(2), but nothing in that exception authorizes any entity to "determine the division of property that is property of the estate" or provide for the collection of any claim (such as Dr. Styer's contingent indemnification claim) that does not fall within the federal definition of "domestic support obligation."

As the court observed during the May 1, 2014 hearing, however, the parties' ultimate settlement embodied in the October 2013 Order did more than simply increase the amount of Dr. Styer's monthly alimony payment to $5,500.00; it also addressed his "hold harmless" or indemnification claim against the Debtor under the JOD—a claim in the nature of property settlement rather than support.

What troubles the Trustee is that the Debtor and her ex-husband agreed to permit Dr. Styer to withhold a substantial sum of money each month for twenty-four months to pay a contingent claim, thereby benefitting one creditor at the expense of all others, and did so through an order that is ambiguous about what happens if the contingency (Dr. Styer's failure to complete his chapter 13 plan) never comes to pass. Furthermore, the accommodation of this particular creditor came about without first seeking relief from the automatic stay in the Debtor's bankruptcy case. Had Dr. Styer sought stay relief to pursue his indemnification claim through the Family Court as a setoff, the Trustee would have had formal notice that the Family Court's proceedings could possibly affect the estate; instead, the Trustee only discovered the October

2013 Order many months after the Debtor and Dr. Styer purportedly reached their agreement (in principle) regarding support and indemnification. Significantly, the support from Dr. Styer is the only source of funding for the Debtor's plan, and the setoff embodied in the October 2013 Order, in binding, plainly impacts the Debtor's estate and her creditors. As this court previously held, because Dr. Styer and the Debtor "did not obtain stay relief from the bankruptcy court, the Family Court's order approving their post-petition agreement is voidable under *Easley v. Pettibone Michigan Corp.*, 990 F.2d 905 (6th Cir.1993)." *In re DeGroot*, 460 B.R. 159, 167 (Bankr. W.D. Mich. 2011). Ordinarily, actions taken in violation of the automatic stay "are invalid and voidable and shall be voided absent limited equitable circumstances." *Easley*, 990 F.2d at 911.

The constellation of these admittedly unusual facts hints at the Debtor's bad faith and for this reason the Trustee naturally asked the court to condition its approval of the Third Amendment upon the Debtor taking some steps toward rectifying the stay violation and perceived unfairness that flowed from the October 2013 Order. The court concurs with the Trustee that some conditions are necessary.

As the court stated during the May 1, 2014 hearing, it will require the Debtor, at her election, to pursue one of the following courses of action, each designed to mitigate the effects of the October 2013 Order on her creditors. First, she may seek clarification from the Family Court regarding what it intended would happen to the $18,000.00 it authorized Dr. Styer to withhold if he successfully completed his plan. The court will *sua sponte* modify the automatic stay to give the Family Court complete authority to resolve the question and notes that the Trustee has standing to participate in that proceeding to the extent that property of the estate, the estate's interests, or his ability to comply with the Bankruptcy Code are implicated. 11 U.S.C. § 323.

Second, the parties, including the Debtor, Dr. and Mrs. Styer, and their respective bankruptcy trustees, may also reach a settlement of the issue of Dr. Styer's withholding of the $750.00 per month, possible escrow of those funds, and ultimate disposition depending upon the outcome of his chapter 13 case.

Third, the Debtor may seek an order from this court to avoid the Family Court's October 2013 Order to the extent it offends the automatic stay. Although this court will not hesitate to enforce the automatic stay, this course of action is the least respectful of the Family Court's authority, and one that the court would encourage the Debtor to avoid if at all possible. As the court observed during the May 1, 2014 hearing, the parties' family lawyers, both of whom are familiar with bankruptcy law, ought to have more thoroughly advised the Family Court about the bankruptcy-related landmines inherent in their request to secure Dr. Styer's contingent indemnification claim through the provisions of the October 2013 Order.

To summarize, this court will conditionally approve the Third Amendment, and will expect the Debtor to comply with her plan as thereby amended. The court, however, will also insist upon the Debtor's compliance with the additional conditions prescribed in this Order.

Finally, nothing in this Order shall be construed to limit the Family Court's authority to decide the support and other domestic relations issues between the parties that are traditionally committed to the state courts as Congress acknowledged in 11 U.S.C. § 362(b)(2). Moreover, the Family Court may modify, clarify, or even ratify the October 2013 Order as it sees fit, provided, however, that the Family Court permits the spouses' bankruptcy trustees to be heard in advance of any ruling.

NOW, THEREFORE, IT IS HEREBY ORDERED that, subject to the following conditions, the Third Amendment is APPROVED and the Debtor and all interested parties shall treat the plan as amended thereby, effective upon the entry of this Order;

IT IS FURTHER ORDERED that the Debtor, within 60 days after entry of this Order, shall take one of the following steps:

(1) file a motion in the Family Court seeking clarification or modification of the October 2013 Order as it pertains to Dr. Styer's withholding of the $750.00 per month and the respective rights of the spouses (and their estates) to the monies so withheld;

(2) file a motion or motions in the United States Bankruptcy Court to approve a settlement with Dr. Styer (if reached) regarding Dr. Styer's withholding of the $750.00 per month and the respective rights of the spouses (and their estates) to the monies so withheld;

(3) file a motion in the United States Bankruptcy Court seeking a declaration regarding the extent of the Family Court's authority to enter the October 2013 Order and whether the federal court should void the state court's order.

IT IS FURTHER ORDERED that the automatic stay is modified to the extent necessary to permit the Debtor, the Family Court, and other interested parties to take, or respond to, the actions required in the decretal paragraphs of this Order.

IT IS FURTHER ORDERED that the Clerk shall enter a copy of this Order in the Styer Case and the above-captioned case.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Elizabeth Anne Coats, Lowell L. Styer,

Charmaine R. Styer, Michael Culp, Esq., Martin L. Rogalski, Esq., Brett N. Rodgers, Esq., Barbara P. Foley, Esq., and the United States Trustee.

IT IS FURTHER ORDERED that the Clerk shall send a courtesy copy of this Order to the Hon. Kent D. Engle, Circuit Court Judge for Ottawa County, Michigan, 414 Washington Avenue, Suite 300, Grand Haven, Michigan 49417.

END OF ORDER

**IT IS SO ORDERED.**

**Dated May 5, 2014**



_____

Scott W. Dales
United States Bankruptcy Judge